[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of the marriage of the parties brought by the wife approximately two and a half years ago. At trial the parties entered into a stipulation for judgment on issues of custody, visitation, and property distribution, but were unable to agree on certain financial issues including alimony and child support. The court heard the evidence and entered judgment dissolving the marriage on the ground of irretrievable breakdown, but retained jurisdiction and reserved judgment on those issues which were controverted.
The parties were married on February 1, 1980 in Honduras and CT Page 2806 are the parents of three children: Alexsandria, who is now an adult; Nora, who turned eighteen on February 18, 2000; and Adam, who was born on May 13, 1990 and is the only minor child. At the time of the marriage, the husband was serving in the Peace Corps in Honduras, where the wife had always lived. He had a degree in agriculture and was fluent in Spanish. The wife had completed a third grade education in Honduras. She learned to speak English quite competently when the parties came to the United States, but still requires help with written English.
The wife, who has minimal skills and limited work experience, is employed as a housekeeper at a medical facility at an hourly rate of $8.40. The husband, whose degree and dual language ability give him greater skills, is self employed as a grower. Although there is dispute about his actual earnings, his financial affidavit indicates that he earns $80.00 per week. He has had the same employment, although for different employers, for nearly the whole time since the parties returned to the United States at the beginning of their marriage. He was initially employed by a company to assist Hartford residents in community gardening and for work at a greenhouse. Later, when the land on which the greenhouse was located sold the property, the company gave him $40,000.00 to move the greenhouse to Windsor, where the parties purchased a house. He undertook the move, but it actually cost $60,000.00 to complete. To finance the additional sum, the parties put a $60,000.00 mortgage on property in Hartford they had purchased from Trinity College for $14,000.00 as part of an urban rehabilitation effort. That property was destroyed by fire, but the proceeds of the insurance permitted the parties to repay the mortgage. The husband has worked in the greenhouse in Windsor since he moved it there, and now owns it. The greenhouse was a profitable enterprise for a time, and the wife worked there as well. However, in recent years, it has become unprofitable. The husband has received salary from the greenhouse in the past, and the corporation that owns it has paid the mortgage on the Windsor property for the past nine years, although it has been difficult to keep that current in recent months.
The husband maintains that the good he can do for his family and society[1] by continuing in business exceeds the good that he can do for his family by finding ajob which will pay him an actual salary. He wants to maintain the business even though it is financially disadvantageous for him to do so. However, it is not clear that his choices are that limited. Although he does CT Page 2807 something in the greenhouse every day, the work permits him substantial free time. There is no dispute that he could (at a minimum) perform the same, work the wife does. He believes that he owes his wife nothing, and resents her and the thought of a possible obligation of continuing support to her.
Despite his belief, he has an earning capacity beyond his present declared earnings. Indeed, taking into account the rental income he has regularly received from the greenhouse, his business' contribution to other expenses, the depreciation allowance he takes, and the sums of cash he has received, he has always had and still has an income stream from his business. Prior to 1997, this amounted to approximately $24,000.00 per year for rental payments and salary payments alone. In 1998, the last year for which he prepared a corporate tax return, the business had gross sales of $71,989.00. His income from the farm including rent and depreciation was approximately $16,000.00. Those earnings are largely passive, particularly in light of the fact that he devotes only about thirty hours per week to the farm and has significant control over when he does some of the work. He therefore has the ability to keep the farm, if he chooses, and to perform additional work outside of it. His earning capacity if he were to work at the farm and for only twenty hours per week outside of it at a rate comparable to the wife's is $24,000.00 annually. If the business continues and he works outside the farm for thirty hours per week, his earning capacity is $568.00 per week, or $28,400.00 per year. Because the husband has no child care duties from Friday morning when Adam goes to school until Monday afternoon when he comes home, and the greenhouse does not consume more than thirty hours per week, he has the ability to earn at least $24,000.00 per year from the greenhouse and outside part-time employment. Because of the tax status of the Subchapter S corporation, only the part-time portion would be subject to federal tax. Accordingly, the court finds that the husband's net earning capacity for purposes of child support is $436.00.
The court has considered the statutory criteria in Sec; 46b-62, 82, and 84 together with the relevant case law. The court makes the following orders.
1. The husband will pay the sum of $2,800.00 toward the wife's attorneys fees (which total $3,936.80) by paying the wife the sum of $50.00 per month until the sum is paid in full. This obligation is in the nature of support, and is not dischargable in bankruptcy. CT Page 2808
2. The husband is liable for an arrearage of $800.00 in child support for the period between November 3, 1999 and January 7, 2000. He will pay that sum to the wife at the rate of $14.00 per week until the amount is paid in full.
3. The husband will pay the wife the sum of $85.00 per week as alimony until her death, remarriage, or cohabitation as defined by the statute. The term of the alimony shall not be modifiable. In addition to any other reason alimony is modifiable as to amount, it shall be modifiable if he fails to indemnify her on account of the debts which he will be obligated to pay under this judgment.
4. The husband shall indemnify the wife and hold her harmless on account of the following debts:
Connecticut Valley Radiology $235.00
Hartford Hospital $148.00
All debts listed on his financial affidavit $39,996.00
5. The husband will pay the wife the sum of $70.00 per week in child support. This amount is consistent with the child support guidelines, which requires a payment of $101.00 per week but permits a deviation because of the parties' shared custody arrangement.
6. The parties will maintain medical insurance for the minor child as it is available to them through their employment. In the event that neither party has medical insurance for the child, the husband will diligently apply for medical benefits including "Husky" benefits as are available in the public sector. The parties will each pay 50% of unreimbursed medical bills, orthodontic bills, psychological or psychiatric bills, and pharmaceutical bills for Adam.
7. These provisions shall be incorporated into the judgment along with the provisions of the stipulation of the parties dated January 7, 2000.
Judgment shall enter accordingly.
BY THE COURT, CT Page 2809
GRUENDEL, J.